UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

| | |
|---|---|
| LAURA KAU, <br><br> Plaintiff, <br><br> v. <br><br> WISCONSIN INDEPENDENT LEARNING COLLEGE, INC., <br><br> and <br><br> TERRI LYNN-JOHNSON, <br><br> Defendants. | CIVIL ACTION NO. 22-cv-928 <br><br> Jury Trial Demanded |

**COMPLAINT**

**(Retaliatory Discharge, 31 U.S.C. § 3730(h); Wisconsin Common Law Wrongful Discharge; and Tortious Interference)**

Plaintiff Laura Kau by and through her counsel, Nola J. Hitchcock Cross and Paul Schinner of Cross Law Firm, S.C., complains and states as follows against Defendants:

**I.  NATURE OF THE CASE**

1. Defendant Wisconsin Independent Learning College ("WILC") is a private, nonprofit college that provides a variety of services, such as daily living skills ("DLS") training and vocational training, to adult students with intellectual disabilities in exchange for payment received largely from state and federally funded Medicaid program.

2. From September 2021 until her May 31, 2022 termination, Plaintiff Laura Kau was Defendant WILC's Program Coordinator. Just a few months into her position, Plaintiff discovered that Defendant WILC was systemically submitting false claims for payment to Medicaid-funded programs for student services that it was not actually providing.

3. After Plaintiff in April and May 2022 reported the fraudulent billing to Defendant WILC's Board of Directors and Executive Director Terri Lynn-Johnson, Defendant Lynn-Johnson made false, retaliatory statements about Plaintiff culminating in Defendant WILC's May 31, 2022 retaliatory termination of Plaintiff's employment without any warning, purportedly because she questioned Lynn-Johnson's "leadership."

## II. FEDERAL JURISDICTION AND VENUE

4. This Court has jurisdiction over the subject matter of this action pursuant to 31 U.S.C. § 3730(h).

5. This Court has supplemental jurisdiction over the pendent state law claim pursuant to 28 U.S.C. § 1367(a).

6. The Court has personal jurisdiction over the Defendants because Defendants are located in this District and regularly conduct business in this District.

7. Venue is proper in this district pursuant to 31 U.S.C. § 3732(a) because the Defendants' headquarters, operations, and employees are all located in this District and the events that gave rise to this complaint occurred in this District.

## III. PARTIES

8. **Plaintiff Laura Kau** is a resident of the State of Wisconsin. She worked for Defendant WILC as an Instructor from August 2014 to September 2017, and again from January 4, 2018 to May 24, 2018.

9. **Defendant Wisconsin Independent Learning College (WILC)** is a Wisconsin non-stock corporation with a principal place of business located at 1936 Mac Arthur Rd, Waukesha, WI 53188. Its registered agent is Defendant Terri Lynn-Johnson, who is located at the same address.

10. **Defendant Terri Lynn-Johnson** is a resident of the state of Wisconsin. She has been employed as Defendant WILC's Executive Director since 2014 and during all times relevant to this complaint.

### IV. FACTUAL BACKGROUND

11. Defendant WILC was first incorporated on January 17, 2012, and Defendant Lynn-Johnson has served as WILC's Executive Director since 2014.

12. Defendant WILC also employs about seven (7) staff, including Instructors, Therapists, Employment Specialists, and a single office support staffer responsible for processing accounts receivable and billing.

13. All of Defendant WILC's staff work directly or indirectly under the direction of Defendant Lynn-Johnson.

14. Plaintiff has a Master's Degree in Special Education and has extensive experience working with intellectually disabled individuals and students.

15. Plaintiff was employed by WILC as an Instructor from August 2014 to September 2017, when she left to be a stay-at-home mother.

16. In September 2021, Plaintiff returned to Defendant WILC as a Program Coordinator.

17. As Program Coordinator, Plaintiff reported to Defendant Lynn-Johnson and worked closely with all of Defendant WILC's staff on student admissions and curriculum development as well as the coordination of WILC's various programs, activities, services, parent/family communications, scheduling, and related correspondence and documentation.

18. At all times relevant to this complaint, Defendant Lynn-Johnson, as WILC's Executive Director, was responsible for overseeing WILC's day-to-day operations as well as WILC's finances, billing, and regulatory compliance.

19. Defendant WILC organizes its services into four different programs:

- Daily Living Skills,
- Prevocational Training,
- Vocational Training,
- Recreational Therapy.

20. Defendant WILC receives funding through the "Include, Respect, I Self-Direct" or "IRIS" program, a Medicaid Home and Community-Based Services (HCBS) waiver program authorized under § 1915(c) of the Social Security Act and approved by the Centers for Medicare and Medicaid Services (CMS).

21. Defendant WILC also receives funding through the Wisconsin Department of Workforce Development's Division of Vocational Rehabilitation (DVR), a state and federally-funded program designed to obtain, maintain, and advance employment for people with disabilities.

22. Under IRIS, daily living skills (DLS) training services are defined as the:

> provision of education and skill development to the participant to teach or improve the skills involved to independently perform routine daily activities, including skills to increase the participant's independence and participation in community life. This service may include teaching money management, home care maintenance, parenting skills, driving evaluation and lessons, information technology training, food preparation, mobility training, self-care skills, and the skills necessary for accessing and using community resources.

*See* WI Department of Health Services, Division of Medicaid Services, *IRIS Service Definition Manual*, P-00708B (08/2021) at 12, *available at* https://www.dhs.wisconsin.gov/publications/p00708b.pdf.

23. To receive payment from federally funded programs like IRIS, Defendant WILC submits regular invoices for each student documenting the date of each service, a descriptive "service code," the rate of payment per 15-minute "units," the number of units per day, and the total amount of payment sought for each service.

24. As a Medicaid-enrolled IRIS provider, Defendant WILC agreed to ensure that its staff involved in the provision of billable services like DLS training were properly trained in "[b]lling and payment processes" … including recordkeeping and reporting." DHS, *IRIS Support Services Provider Training Standards*, (Feb. 2021) at 5, *available at* https://www.dhs.wisconsin.gov/publications/p03071.pdf.

25. However, Defendant WILC failed to provide any such training.

26. Rather, Defendant WILC's staff who provide services to students have no involvement in the documentation or submission of claims for payment for their services whatsoever, as the selection of billing codes and submission of invoices is conducted by administrative staff under the direction of Defendant Lynn-Johnson, without any documentation of what services a student was actually provided.

27. Defendant Terri Lynn-Johnson signs and approves each IRIS invoice which includes, immediately below the signature line, the following language:

> Your signature is an attestation that you have read, understand, agree, and comply with requirements stated in the Wisconsin Medicaid Program Provider Agreement, DHS Form F-00180/A/B/C.

28. The Wisconsin Medicaid Program Provider Agreement requires participating providers, like Defendant WILC, to expressly agree not to submit false claims and to comply with "all other applicable federal and state laws, regulations, and policies relating to providing home and community-based waiver services under Wisconsin's Medicaid program."

29. Billing Medicaid for services that are not actually provided can constitute a well-recognized form of Medicaid fraud prohibited by both state and federal law.

30. At all times relevant to this complaint, Defendant Lynn-Johnson and members of Defendant WILC's Board of Directors were aware that billing Medicaid for services that were not actually provided can constitute a well-recognized form of Medicaid fraud prohibited by both state and federal law.

## V. DEFENDANTS' RETALIATORY CONDUCT

31. In early 2022, Plaintiff noticed that Defendant WILC appeared to be submitting claims to IRIS for services that WILC was not actually providing.

32. For example, Plaintiff observed that WILC was submitting invoices requesting payments for thousands of dollars of units of "daily living skills" (DSL) services per week, billed under code T2017, when, in reality, the students had received far less than the amount of DSL billed.

33. Instead, large portions of the time falsely billed as spent on DSL was actually spent on various non-covered "recreational" activities with no plausible or meaningful connection to "daily living skills" or "vocational training" as those terms are defined and/or reasonably understood in the context of the relevant federally funded programs described above.

34. For example, students would spend—and Defendant WILC would bill for—time spent swimming in Defendant Lynn-Johnson's pool, playing games or watching movies such as Disney's *Encanto* and *Raya and The Last Dragon*.

35. In other words, Defendant WILC was operating more like a "day program" or adult day care than a "transition program" eligible for the type of state and federal funding Defendant WILC was seeking and obtaining.

36. In addition, Plaintiff noticed that some of Defendant WILC's students were simply not eligible for admission to Defendant WILC or participation in WILC's federally funded programs.

37. For example, on March 17, 2022, Plaintiff reported ongoing concerns she had regarding the nature of the services WILC was providing to a particular student (Student A) to Defendant Lynn-Johnson, explaining that, in addition to already receiving DVR services through a different vendor, Student A, due to a high level of independence and certain behaviors noted in Student A's Individualized Education Program (IEP) and healthcare provider reports, did not meet admissions criteria.

38. In response, rather than engage with Plaintiff, Defendant Lynn-Johnson stated "If [Student A's first name] leaves, that's $2,000 a month we don't have" and accused Plaintiff of lacking understanding.

39. Beginning around early April 2022, Plaintiff began to communicate with other Defendant WILC staff, including instructors, about her concerns with WILC's approach to billing and program eligibility.

40. Through these communications, Plaintiff corroborated her billing and eligibility concerns and learned that other staff shared those concerns.

41. In April 2022, Plaintiff was assigned responsibility for Defendant WILC's billing because the employee in that role was leaving.

42. While performing her new billing duties, Plaintiff confirmed the systemic, widespread nature of Defendant WILC's false billing for DLS and vocational services, which in turn caused her to promptly communicate her concerns to Defendant WILC's management.

43. For example, on April 27, 2022, during a conversation with Defendant Lynn-Johnson, Plaintiff expressly explained that Defendant WILC was billing for services that it was not providing, citing as an example a specific student for which Defendant had submitted an invoice for **20 hours** of pre-vocational skills training when a review of the student's schedule indicated no more than **2-3 hours** of such training.

44. Nonetheless, on information and belief, Defendants declined to report any overpayments to IRIS or DVR, or otherwise implement any of Plaintiff's suggested corrections or operational changes.

45. On May 4, 2022, Plaintiff met with Linda Sumwalt, President of Defendant WILC's Board of Directors and explained her concerns, this time bringing with her illustrative documentation, including a weekly calendar of what WILC's students had been doing, i.e. that WILC was providing day program/enrichment program activities but falsely billing for such activities as if they were DLS training and prevocational training services.

46. During the same meeting, Plaintiff provided a detailed proposal aimed at stopping and correcting the inaccurate billing while also keeping students enrolled by ensuring students were receiving appropriate services and that such services were appropriately documented and billed.

47. During the same meeting, Ms. Sumwalt told Plaintiff that Plaintiff's concerns appeared serious and valid and reassured Plaintiff, stating Plaintiff would not be "thrown under the bus." Sumwalt also said she would be speaking with another Board member the next week.

48. On May 20, 2022, Defendant WILC's Board met in a closed session to discuss the false billing concerns Plaintiff had raised.

49. On May 24, 2022, Defendant Lynn-Johnson met with Board President Linda Sumalt and, on information and belief, discussed the closed-door meeting and the billing concerns Plaintiff had raised.

50. Between May 24 and May 31, 2022, Defendant Lynn-Johnson falsely told multiple staff members that Plaintiff was intentionally restricting Lynn-Johnson's access to a program used by WILC to track students' billable hours by changing passwords and login information.

51. On May 31, 2022, prior to 12:30 PM, Plaintiff received a notice that Defendant Lynn-Johnson had attempted to log in to Plaintiff's work email.

52. On May 31, 2022, at about 2:00 PM, Defendant Lynn-Johnson sent an email and text message to all staff scheduling a staff meeting for 3:10 PM.

53. At the meeting, with Plaintiff and four other staff members present, Defendant Lynn-Johnson announced that Defendant WILC had decided to terminate Plaintiff's employment, effective immediately.

54. When Plaintiff inquired as to the reason for the termination, Defendant Lynn-Johnson claimed that it was the Board's decision, but did not provide a reason.

55. However, Defendant Lynn-Johnson did close the meeting with a threat, telling the other four staff members present that, for "anyone who [did] not like [her] leadership," she would be in the building the next morning to accept resignation letters.

56. On information and belief, Defendant Lynn-Johnson communicated false information to the WILC Board regarding Plaintiff, Plaintiff's billing concerns, and Plaintiff's job performance.

57. Prior to her termination, Plaintiff had received no warnings, no disciplinary action, and no negative performance feedback of any kind.

58. Prior to her identification of the above-described billing problem, Plaintiff had had only a positive rapport with Defendants WILC and Lynn-Johnson.

59. Had Plaintiff not reported and attempted to stop and correct Defendants' policies and practices which were resulting in the submission of false claims for payment to federally funded programs like IRIS and DVR, she would not have been terminated.

### VI. COUNTS

### COUNT ONE

**VIOLATIONS OF THE FEDERAL FALSE CLAIMS ACT**
**31 U.S.C. § 3730(h)**

**RETALIATION AGAINST PLAINTIFF**
**(Against Defendant WILC Only)**

60. Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs as if fully restated herein.

61. 31 U.S.C. § 3730(h), provides, "(1) Any employee… shall be entitled to all relief necessary to make that employee… whole, if that employee is… discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and

conditions of employment because of lawful acts done by the employee… in furtherance of, other efforts to stop one or more violations of this subchapter."

62. Plaintiff was discriminated against in the terms and conditions of employment when her repeated attempts to stop Defendant WILC from knowingly or recklessly submitting materially false invoices to federally funded programs caused Defendant WILC's retaliatory decision to terminate her employment.

63. As a result of Defendant WILC's retaliatory conduct, Plaintiff has suffered substantial damages, including, not limited to, lost earnings, emotional distress, reputational harm, and lost earning capacity.

## COUNT TWO

### WISCONSIN COMMON LAW PUBLIC POLICY EXCEPTION TO AT WILL EMPLOYMENT DOCTRINE

### WRONGFUL DISCHARGE

### (against Defendant WILC only)

64. Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs as if fully restated herein.

65. Wisconsin common law recognizes a "public policy exception" to the employment at will doctrine whereby a "wrongful discharge is actionable when the termination clearly contravenes the public welfare and gravely violates paramount requirements of public interest" and "the employee is terminated for refusing a command, instruction, or request of the employer to violate public policy as established in existing law." *Hausman v. St. Croix Care Ctr.*, 214 Wis. 2d 655, 664-65, 571 N.W.2d 393, 396-97 (1997).

66. Plaintiff was terminated for refusing Defendant WILC's commands, instructions, and requests that she submit or cause the submission of false claims for payment to federally

11

funded programs in violation of public policy as established by state and federal Medicaid regulations and the federal False Claims Act.

## COUNT THREE

## TORTIOUS INTERFERENCE

### (against Defendant Lynn-Johnson Only)

67. Plaintiff realleges and incorporates by reference the allegations of all previous paragraphs as if restated herein.

68. Plaintiff had a contractual relationship with a third party, Wisconsin Independent Learning College, Inc., as an at-will employee.

69. Defendant Lynn-Johnson intentionally interfered with Plaintiff's contractual relationship by, inter alia, refusing to stop and correct processes Plaintiff had identified which were resulting in the submission of false claims to federally funded programs, and making false statements about Plaintiff to the WILC Board of Directors and WILC staff.

70. Defendant Lynn-Johnson's interference with Plaintiff's contractual relationship was not privileged.

71. Defendant Lynn-Johnson was acting in her personal capacity when she interfered with Plaintiff's contractual relationship, insofar as she was acting *ultra vires* and was not authorized by her employer to engage in tortious interference.

72. Defendant Lynn-Johnson's interference caused Plaintiff substantial damages, including, not limited to, lost earnings, emotional distress, reputational harm, and lost earning capacity.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff is entitled to damages from Defendant WILC in accordance with the provisions of 31 U.S.C. § 3730(h), and, as to Defendant Lynn-Johnson, Wisconsin common law. Plaintiff requests that judgment be entered against Defendants, including that:

a. Plaintiff be awarded 2 times the amount of back pay, interest on the back pay, reinstatement or front pay in lieu of reinstatement, and compensation for any special damages sustained as a result of the discrimination, including damages for emotional distress, pain and suffering, punitive damages, and litigation costs and reasonable attorneys' fees pursuant to 31 U.S.C. § 3730(h);

b. Plaintiff be awarded, in the alternative, all consequential damages under Wisconsin common law, including past and future lost wages and benefits;

c. Plaintiff be granted all such other relief as the Court deems just and proper.

**PLEASE TAKE NOTICE THAT THE PLAINTIFF DEMANDS THE ABOVE ENTITLED ACTION BE TRIED TO A 12-PERSON JURY.**

Respectfully submitted and dated this 12th day of August 2022

Attorneys for Plaintiff Laura Kau
**Cross Law Firm, S.C.**

By: */s/ Paul Schinner*
Paul Schinner
SBN # 1093983
Nola J. Hitchcock Cross
SBN # 1015817
**Cross Law Firm, S.C.**
Lawyer's Building
845 North 11th Street
Milwaukee, WI 53233
Phone: (414) 224-0000
Fax: (414) 273-7055
Email:schinner@crosslawfirm.com
njhcross@crosslawfirm.com